UNITED STATES DISTRICT COURT
IN THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PETER ANDA, LATRICIA BELL,
JONATHAN ELSENBROEK,
JACQUELYN JOHNSON, LESLIE
PENEGOR and DONALD WALSTROM,
for themselves and class members,

    Plaintiffs,                               Case No. 14-CV-00295-RJJ

v.

ROOSEN VARCHETTI & OLIVIER, PLLC,
RICHARD G. ROOSEN, PAUL E. VARCHETTI,
LYNN M. OLIVIER, WEB EQUITY HOLDINGS, LLC,
CAVALRY SPV I, LLC and MAIN
STREET ACQUISITION CORP.,

    Defendants.

___

**DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS'**
**MOTION FOR APPOINTMENT OF CLASS COUNSEL**

Defendants oppose the appointment of Phillip Rogers and Michael Nelson as class counsel because their actions in soliciting Plaintiffs to participate in this suit and the terms of their retention violate the Michigan Rules of Professional Conduct. Mr. Rogers induced Plaintiffs to bring this case by falsely implying both that the filing of suit was imminent and that a favorable result was all but guaranteed. He and Mr. Nelson (jointly, "Plaintiffs' Counsel") then convinced Plaintiffs to *irrevocably* assign any entitlement to attorneys' fees to Plaintiffs' Counsel and to surrender their right to settle this case to Plaintiffs' Counsel. Plaintiffs' Counsel's actions have completely removed Plaintiffs from this case and made the attorneys the real parties in interest. As such, Plaintiffs' Counsel's actions are not only contemptible (so as to

prohibit them from serving as class counsel) they unequivocally violate the ethical requirements of MRPC 1.8(j), 7.1 and 7.3.

A. **Background facts.**

On or about March 4, 2014, Mr. Rogers mailed form solicitation letters ("Solicitation Letter") to Plaintiffs Peter Anda, Jonathan Elsenbroek, Jacquelyn Johnson and Donald Walstrom. *See* March 4, 2014 letter, attached as Exhibit A. The Solicitation Letter indicates that Roosen Varchetti & Olivier, PLLC ("RVO") "has frequently violated Federal and Michigan law by adding the cost of all garnishments, *successful or not,* to the judgment debtor's account balance." *See* Exhibit A, emphasis in original.[1] The Solicitation Letter induced Mr. Anda, Mr. Elsenbroek, Ms. Johnson and Mr. Walstrom to retain Plaintiffs' Counsel to represent them in this case.[2] *See* Answers to Rule 34 Document Request, attached as Exhibit B. In their retention agreements with Plaintiffs' Counsel ("Retainer Agreements"), each of the Plaintiffs "irrevocably" assigned to Plaintiffs' Counsel "all attorney's fees and costs that are obtainable under 15 U.S.C. § 1692k." *See* Exhibit B attachment at ¶ 4(B). Plaintiffs also agreed that they would not "settle any claim in the Lawsuit" except through Mr. Rogers and Mr. Nelson. *Id.* at ¶5.

---

[1] RVO has demanded a retraction of the defamatory statements against it and have retained counsel to protect and pursue its rights. Moreover, because the Solicitation Letter and Retainer Agreement are significant violations of the Michigan Rules of Professional Conduct, RVO must notify the Attorney Grievance Commission, under MRPC 8.3(a).

[2] Plaintiff Leslie Penegor retained Andrew Campbell to represent her in this case. Mr. Campbell did not solicit Ms. Penegor as a client, but told her that she would not have to pay the costs of litigating this suit a violation of MRPC 1.8. *See* Penegor Dep. at p. 11, attached as Exhibit C. Ms. Penegor has not produced a copy of her retention agreement with Mr. Campbell, although the agreement was sought in discovery. *See* Exhibit B. Mr. Campbell has never been appointed class counsel and does not appear to have done any work to investigate or prosecute this case. *See* Brief in Support of Motion to Appoint Class Counsel at Exhibit C. He has not demonstrated under Rule 23(g) that he has the resources or experience to represent a class on his own.

B.  Legal standard.

"When one applicant seeks appointment as class counsel, the court may appoint that applicant only if the applicant is adequate under Rule 23(g)(1) and (4)." *See* Rule 23(g)(2). The language of Rule 23(g)(4) parallels that of Rule 23(a)(4), requiring that "class counsel must fairly and adequately represent the interests of the class." *See* Rule 23(g)(4). In deciding whether to appoint class counsel, the court must consider the factors enumerated in Rule 23(g)(1)(A) and "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." *See* Rule 23(g)(1)(B).

Moreover, "Class counsel owes a fiduciary obligation of particular significance to their clients when the class members are consumers, who ordinarily lack both the monetary stake and the sophistication in legal and commercial matters that would motivate and enable them to monitor the efforts of class counsel on their behalf." *Creative Montessori Learning Centers v. Ashford Gear LLC*, 662 F.3d 913, 917 (7th Cir. 2011), citing *Culver v. City of Milwaukee*, 277 F.3d 908, 913 (7th Cir. 2002). In other words, when the absent class members are unsophisticated consumers – as in this case - the court must pay more particular attention to proposed counsel's suitability as a fiduciary for the class. Here, the manner in which Plaintiffs' Counsel fished for clients in the courthouse records room, the misrepresentations made in the Solicitation Letter and the improper provisions in the Retainer Agreements demonstrate contempt by Plaintiffs' Counsel for their ethical obligations. They have cynically reduced Plaintiffs to no more than empty conduits whose sole purpose in this case is to serve as a name to which a fee award could be attached. Plaintiffs' Counsel fall far short of deserving the privilege of appointment as class counsel and their motion must be denied.

### C. Plaintiffs' Counsel improperly solicited Plaintiffs and misrepresented both facts and law in that solicitation, in violation of the Michigan Rules of Professional Conduct.

Mr. Rogers began this suit by searching through the 61st District Court files, looking specifically for collection actions filed by RVO in which writs of garnishment were issued. Counsel then sent Solicitation Letters to the defendants in those cases, informing them that he "discovered" that RVO "has repeatedly violated the Federal and Michigan debt collection laws, in hundreds, and perhaps thousands, of debt collection lawsuits filed against Michigan consumers." *See* Exhibit A. Mr. Rogers further stated that, within the next ten days, he "intended" to file a "class action lawsuit" against RVO, "its attorneys, and its clients" in an attempt to stop RVO's "unlawful practice" and "obtain money damages for my clients." *Id.*

Plaintiffs' Counsel defends the direct and targeted solicitation of Plaintiffs as permitted under MRPC 7.3(a) because the Solicitation Letter is a "truthful and non-deceptive" letter to a "potential client," like that authorized in *Shapero v. Kentucky Bar Assoc.,* 486 U.S. 466, 486 (1988). *See* Reply in Support of Motion for Class Certification at p. 2, Dkt. # 73. The Solicitation Letter in fact falls squarely into the category of communications that the *Shapero* court found improper.

The *Shapero* court considered the constitutionally of a Kentucky Supreme Court Rule that banned attorney advertisements that were "precipitated by a specific event or occurrence" involving the recipient. *Shapero,* 486 U.S. at 469. In attempting to draw a line between communications which were entitled to First Amendment protection and solicitations that could be banned through a rule governing attorney conduct, the *Shapero* court found that communications from attorneys to prospective clients are misleading (and therefore properly banned by an ethical rule like MRPC 7.3) when the solicitation "offers overblown assurances of

client satisfaction." *Shapero,* 486 U.S. at 479. To illustrate this point, the *Shapero* court cited with approval a decision from the Court of Appeals of New York that sanctioned an attorney for representing to potential clients that the attorney believed that "the liability of the defendants is clear." *Shapero,* 486 U.S. at 479, citing *In re Von Wiegen,* 481 N.Y.S.2d 40, 49 (1984).

Here, the Solicitation Letter states that Plaintiffs' Counsel "discovered" that RVO "has frequently violated Federal and Michigan law" and did so in "hundreds, and perhaps thousands" of "debt collection lawsuits filed against Michigan consumers." This representation of RVO's liability is definitive and significantly more egregious than the "opinion" statement the *Shapero* court found inherently deceptive in that it implied that a successful result was inevitable. The representation that RVO violated federal and Michigan law in "hundreds, perhaps thousands" of collection suits was not only a patent fabrication but was an improper "over blown assurance" of Plaintiffs' Counsels' wished-for result in the litigation for which the prospective client was being solicited.[3]

Moreover, the Solicitation Letter contains material misrepresentations of the law, in violation of MRPC 7.1(a). Specifically, it states that Michigan law "prohibits" a creditor from adding the costs of "unsuccessful garnishments" to an outstanding balance. This is patently false. Costs of garnishment in Michigan collection cases are proscribed by MCR 3.101(R) and that rule neither states nor implies that a judgment creditor must be "successful" in its efforts in order to assess costs. As detailed in Defendants' Opposition to Plaintiffs' Motion for Class Certification, there are many circumstances in which a judgment creditor may not be

---

[3] RVO had to file a motion for a protective order in light of the onerous discovery served on the issue of the number of potential class members. At no time in the course of the litigation over that motion did Plaintiffs' Counsel indicate that their pre-filing investigation revealed "hundreds, perhaps thousands," of alleged violations. Rather, Plaintiffs' Counsel argued that they should not have to gather information related to this element of the case.

"successful" in garnishing a debtor's wages or assets, but in which costs are nonetheless permitted under MCR 3.101(R). Plaintiffs' Counsel's Statement is not couched as an opinion, but as an affirmative (and erroneous) statement of the law.

Furthermore, the letter in *Shapero* did not incite or solicit litigation but truthfully informed the recipient that he may have a remedy to a legal problem of which the recipient was already aware. *Shapero,* 486 U.S. at 469. The Solicitation Letter in this case was sent for the sole purpose of drumming up litigation based on a false pretense. In addition to the implied and stated misrepresentations described above, the court need only ask how Plaintiffs' Counsel could "intend" to file suit "within ten days" when he had not signed-up any clients. If Plaintiffs' Counsel had a client that was prepared to file "a class action lawsuit" against RVO "within the next ten days," there would be no need for Mr. Rogers to troll for clients. By implying both that the suit would be filed whether or not the recipient retained Plaintiffs' Counsel and that victory in the litigation was assured, Plaintiffs' Counsel has engaged in the very conduct from which MRPC 7.1 and 7.3 protect unwitting clients.

Our federal courts have long held that, "When class counsel have demonstrated a lack of integrity, a court can have no confidence that they will act as conscientious fiduciaries of the class." *Eubank v. Pella Corp.,* 753 F.3d 718, 724 (7th Cir. 2014). Here, Plaintiffs' Counsel's ethical violations were not technical or unintentional. Rather, Plaintiffs' Counsel explicitly violated the Michigan Rules of Professional Conduct so they could cajole unsophisticated consumers into suing RVO, "its attorneys, and its clients" so Plaintiffs' Counsel could sue for fees awarded that will grossly exceed any recovery by their clients. This suit has its genesis in Plaintiffs' Counsel's ethical violations and as a matter of law, Plaintiffs' Counsel are not qualified to represent a class.

D.  **Plaintiffs' Counsel's retention agreements with Plaintiffs also violate the Michigan Rules of Professional Conduct.**

Plaintiffs' Counsel is also not fit to serve as class counsel because the Retainer Agreements violate MRPC 1.8(j) which bars attorneys from acquiring a "proprietary interest" in litigation. Plaintiffs' Counsel's retention agreement goes beyond a simple contingency arrangement and calls for an *irrevocable* assignment to Plaintiffs' Counsel of "any right to all attorney's fees and costs that are obtainable under 15 U.S.C. §1692k." *See* Retainer Agreement, attached to Exhibit B. The Retainer Agreement also bars Plaintiffs from settling this case "except through" Plaintiffs' Counsel. This makes Plaintiffs' counsel the real party in interest concerning the most significant and only litigated element of damages and disqualifies them from serving as class counsel under MRPC 1.8(j).[4]

First, the FDCPA awards to a "person" injured by a violation of the statute, "the costs of the action, together with a reasonable attorney's fee as determined by the court." 15 U.S.C. §1692k(a)(3). The right to recover attorneys' fees in a fee-shifting statute belongs to the aggrieved "person" and not the attorneys. *Venegas v. Mitchell*, 495 U.S. 82, 88 - 89 (1990); *Bradley v. Milliken*, 918 F.2d 178 (6th Cir. 1990) (unpublished). While Plaintiffs may have the legal right to assign any recovery received under 15 U.S.C. § 1692k(a)(3), their decision to irrevocably assign the majority of their rights to their attorneys gives Plaintiffs' Counsel a controlling proprietary interest in this case.

For example, absent the assignment of their rights under 15 U.S.C. §1692k(a)(3), Plaintiffs would have an absolute right to negotiate for the waiver or reduction of a statutory

---

[4] Because this is a class action, damages are capped at the lesser of $500,000 or 1% of the debt collector's net worth. RVO has submitted financial statements demonstrating that its net worth is less than $150,000. Given that the maximum recovery for any *class* therefore is less than $1500, there can be no doubt that this suit is about attorneys' fees.

1583082 v1/14079.0010

7

attorney fee award as part of a settlement of an underlying claim. *Evans v. Jeff D.*, 475 U.S. 717, 731 – 732 (1986); *Tompkins v. Troy School District,* 199 Fed. Appx. 463 (6th Cir. 2006). Moreover, Plaintiffs' Counsel's ethical obligations require them to negotiate a favorable settlement for their clients "without considering his own interest in obtaining a fee." *Evans,* 475 U.S. at 728, n. 14. The irrevocable assignment of "any right to all attorneys' fees and costs that are obtainable" excuses Plaintiffs' Counsel of this obligation because, in negotiating fees, *they* are the client. Damages are set by statute in this case, leaving only attorneys' fees at issue if liability is found. Plaintiffs thus have been left with no role in this case and Plaintiffs' Counsel has no check on their demand for fees or their tactics in negotiating for them. Simply put, Plaintiffs have been reduced to nothing more than figureheads for their attorneys' to prosecute a claim, the only purpose for which is to recover the fees for the attorneys.

Second, while the Retainer Agreements allow Plaintiffs to "withdraw at any time from this case," their right to hire new or different counsel to pursue their FDCPA claims is illusory, given the irrevocable assignment of any attorneys' fees awarded in Plaintiffs' cases and Plaintiffs' contractual promise that they would only settle their claims through Plaintiffs' Counsel. Any new attorney would not be able to negotiate a settlement and would have to agree to take the case *gratis* while Plaintiffs' Counsel would reap the financial benefit. Agreements that have the effect of permanently appointing counsel "create an impermissible conflict of interest." *State Bar of Michigan,* Ethics Opinion RI-321 (June 29, 2000). That is exactly what the Retainer Agreement in this case does.

Finally, Plaintiffs purport to represent all absent class members. However, the Retainer Agreement makes Plaintiffs superfluous in this case, amounting to no more than a host for Plaintiffs' counsel's parasitic fee petition. In assigning their control over both control of the

1583082 v1/14079.0010

8

settlement negotiations and the right to fees, Plaintiffs have ceded control and ownership of this case to their counsel, something the Michigan Rules of Professional Conduct do not permit. Plaintiffs' Counsel's actions in securing these promises from their consumer-clients put their ethics squarely in question and disqualifies them from acting as class counsel.

### E. There are additional grounds for not appointing Plaintiffs' counsel as class counsel.

In addition to disregarding their obligations under the Michigan Rules of Professional Conduct, Plaintiffs' Counsel has shown callous disregard for their clients and the truth. For example, Plaintiffs' Counsels' claim that, "prior to" filing this suit, they secured an affidavit from a representative of the Michigan Department of Treasury ("MDT") concerning the MDT's practices regarding tax writs was an out and out lie. This affidavit was secured after RVO filed a motion to dismiss the case and expressly addressed arguments in RVO's motion. There was no requirement that Plaintiffs' Counsel secure an affidavit prior to filing suit, but stating that they secured an affidavit before filing suit when they did not, suggests that they are not beyond shading the truth.

Moreover, Plaintiffs' Counsel has indicated that their client Latricia Bell "cannot be located and is no longer participating in this suit." *See* Exhibit B. Ms. Bell is still a party to this suit, however, and Plaintiffs' Counsel are still her attorneys of record. If Plaintiffs' Counsel has lost contact with Ms. Bell such that they cannot effectively represent her, they should withdraw. Plaintiffs' Counsel cannot continue to represent a litigant in court, but abandon that litigant in order to avoid discovery. This conduct demonstrates that Plaintiffs' Counsel's will not deal fairly with absent class members who may be difficult to reach and underscores Plaintiffs' Counsels' lack of understanding of their obligations to represent such clients.

1583082 v1/14079.0010

9

### F. Conclusion.

In their avaricious zeal to sue RVO, "its attorneys and its clients," Plaintiffs' Counsel trampled on their obligations as attorneys licensed to practice law in Michigan. They improperly drummed up litigation by misrepresenting facts concerning RVO and the law concerning costs and, in doing so, misled their clients. The Michigan Rules of Professional Conduct expressly bar Plaintiffs' Counsel's actions and appointing them as class counsel is tantamount to rewarding unethical conduct. The motion to appoint counsel therefore must be denied, accordingly.

MADDIN HAUSER ROTH & HELLER, P.C.

*/s/ Kathleen H. Klaus*
Kathleen H. Klaus (P67207)
Attorney for Defendants
28400 Northwestern Highway
2nd Floor
Southfield, MI 48034
(248) 359-7520

Dated: October 15, 2014

---

**CERTIFICATE OF SERVICE**

I hereby certify that on October 15, 2014, I electronically filed the above document(s) with the Clerk of the Court using the ECF system, which will send notification of such filing to the following: all counsel of record.

*/s/ Kathleen H. Klaus*
Kathleen H. Klaus (P67207)
Attorney for Defendants
28400 Northwestern Highway, 3rd Floor
Southfield, MI 48034
(248) 359-7520

---