UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PETER ANDA, LATRICIA BELL,
JONATHON ELSENBROEK,                             Case No. 1:14-cv-00295
JACQUELYN JOHNSON,
LESLIE PENEGOR, and DONALD
WALSTROM, for themselves and                     Hon. Robert J. Jonker
class members,

        Plaintiffs,

v.

ROOSEN, VARCHETTI & OLIVIER,
PLLC, RICHARD G. ROOSEN, PAUL
E. VARCHETTI, LYNN  M. OLIVIER,
WEB EQUITY HOLDINGS, LLC,
CAVALRY SPV I, LLC and MAIN
STREET ACQUISITION CORP.,

        Defendants.
_____/

BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

FACTS

All defendants admit they are "debt collectors" within the meaning of the Fair Debt

Collection Practices Act. See: Law firm defendants' answer and affirmative defenses to

plaintiffs' first amended complaint, Doc# 52, answers to paragraphs 10, 11, 14, 17; Creditor

defendants' answer and affirmative defenses to plaintiffs' first amended complaint, Doc# 50,

answers to paragraphs 21, 24, 25

Defendants have admitted that, in the case of each Plaintiff, the Lawyer Defendants, on

behalf of the Debt Buyer Defendant, stated, on an application for garnishment filed within one

1

year before the filing of this action, i.e. between March 21, 2013 and March 21, 2014, that the "total amount of postjudgment costs accrued to date" and the "amount of the unsatisfied judgment now due (including interest and costs) included the costs of one or more previous garnishments that did not result in a payment.

Peter Anda.

Defendants issued garnishments against the Michigan Department of Treasury in attempt to garnish Mr. Anda's state income tax returns on or about October 31, 2011 and September 4, 2012. Defendants admitted that, at least as of July 9, 2014, when RVO filed its answer to plaintiffs' amended complaint,  defendants had recovered nothing from either of the earlier garnishments. Answer, Doc # 52, ¶¶ 35 - 40. On or after August 22, 2013 Defendants issued a Request and Writ for Garnishment naming the Michigan Department of Treasury as garnishee. In that writ, Defendants represented that the total amount of postjudgment costs accrued to date is $93.00 and the total amount of the unsatisfied judgment now due (including interest and costs) is $4385.61. Answer  ¶ 41. Those amounts included the costs for the two previous garnishments which had not produced a payment. RVO Response to plaintiffs' first interrogatories. Answer ¶¶ 44, 45. RVO answers to plaintiff's interrogatories, Ex. 1 question no. 3.

Jonathan Elsenbroek

On or about April 1, 2013, Defendants filed a request and writ for garnishment in the 61st District Court, naming the Michigan Department of Treasury as garnishee. Answer, ¶ 81. That writ was served on the Michigan Department of Treasury on June 24, 2013. Plaintiffs' first Interrogatories to Roosen, Varchetti & Olivier, PLLC. Doc # 101-2. Defendants' answers to plaintiffs' interrogatories, Ex. 1. Question 4.f.  Defendants did not receive any payment from the

garnishee as a result of that garnishment. Answer, ¶ 83. Although Defendants have claimed that

the writ "remains open and subject to payment.", the affidavit by Aver Hamilton, Doc #30-1,

Page ID#267-271, demonstrates that the writ served June 24, 2013 expired December 31, 2013,

the end of the 2013 "processing year." Since no refund was intercepted during that time, the writ

is no longer in effect and it is certain that it will not result in a payment.

On or after August 22, 2013, Defendants filed a request and writ for garnishment naming

the DOT as garnishee. In that writ, Defendants claimed that the total amount of postjudgment

costs accrued to date is $135.11 and "the amount of the unsatisfied judgment now due (including

interest and costs)" is $6,844.15.  Answer ¶ 84. Defendants admitted the amounts claimed as

postjudgment costs and the amount of the unsatisfied judgment included the costs of the earlier

DOT garnishment that did not, and never will produce a payment. Answer ¶ 91, Answers to

plaintiffs' interrogatories, Ex. 1, question 3, that the $135.11

Jacqueline Johnson

Defendants issued garnishments against the Michigan Department of Treasury on or

about January 9, 2012 and on or about October 4, 2012. Defendants did not receive a payment in

response to either of those garnishments. Law Firm Defendants' Answer to Plaintiffs' First

Amended Complaint. Doc # 52, ¶¶ 100 - 105. Defendants included the costs of both those

garnishments in a later garnishment issued October 12, 2013. Ex. 1. Question 3.

Leslie Penegor

On or about August 29, 2012, defendants filed a request and writ for garnishment against

Ms. Penegor naming the Department of Treasury as garnishee. That writ was served on the

Department of Treasury November 1, 2012. Ex. 1, question 4, k. Defendants received no

payment as a result of that garnishment. Answer, ¶¶ 118, 120. On or after June 21, 2013 defendants filed a request and writ for garnishment naming JP Morgan Chase Bank, NA as garnishee. In that garnishment Defendants stated that the total amount of postjudgment costs accrued to date is $94.75 and the amount of the unsatisfied judgment now due is $2810.18. Answer, ¶ 121. Both those amounts included costs for the August, 2012 tax garnishment that did not produce a payment.. Answer ¶ 124, Ex. 1. Question 3.

Donald Walstrom

On or about March 26, 2012, Defendants filed a request and writ for garnishment against plaintiff Donald Walstrom naming the Michigan Department of Treasury as garnishee. Answer, ¶ 132. The writ was served on the Department of Treasury April 16, 2012. Ex. 1, question 4. l. Defendants received no payment is result of that garnishment. Answer, .¶134. Again, defendants claim that the writ remains viable is wrong. It expired December 31, 2012. Hamilton affidavit. Doc. # 30-1.

ARGUMENT

1. **Michigan law does not permit a judgment creditor to tax costs for garnishments that did not result in a payment.**

   A. **Only a prevailing party is entitled to tax costs.**

   Costs, in Michigan, are not allowed unless there is legal authority to tax those costs. "The power to tax costs is wholly statutory; costs are not recoverable where there is no statutory authority for awarding them." *Herrera v. Levine,* 176 Mich. App. 350, 357; 439 N.W.2d 378 (1989) (citing *Brown v. Dep't of State Highways,* 126 Mich. App. 392, 396; 337 N.W.2d 76 (1983)). "Generally, awards of costs or attorney fees are not allowed unless expressly authorized

by statute, court rule or a recognized exception.  Exceptions must be narrowly construed."

*Rinaldi v. Rinaldi,* 122 Mich. App. 391, 402; 333 N.W.2d 61 (1983).

Michigan follows the general rule that only a prevailing party is entitled to tax costs.

*Barnett v. International Tennis Corp.,* 80 Mich. App. 396, 411; 263 N.W.2d 908 (1978). "Costs

will be allowed to the prevailing party in an action, unless prohibited by statute or by these rules.

. . ." MCR 2.625(A)(1).  "Pursuant to MCR 2.625(A)(1), only the prevailing party is entitled to

recover costs." *Ivezaj v. Auto Club,* 275 Mich. App. 349, 368; 737 N.W.2d 807 (2007).

"[I]n order to be considered a prevailing party, that party must show, at the very least, that its

position was improved by the litigation." *Forest City Enterprises, Inc. v. Leemon Oil Co.,* 228

Mich. App. 57, 81; 577 N.W.2d 150 (1998); accord*:  Fansler v. Richardson,* 266 Mich. App.

123, 128; 698 N.W.2d 916 (2005); *Citizens Ins. Co. of America v. Juno Lighting, Inc.,* 247 Mich.

App. 236, 245-46; 635 N.W.2d 379 (2001).

**B.     A party must prevail in the garnishment proceeding in order to tax costs for the garnishment.**

"Costs in garnishment proceedings are allowed as in civil actions." MCR 2.625(E).  A

party does not prevail, in the garnishment proceeding, unless that party obtains some relief, i.e. a

payment. M.C.R. 3.101(R) provides:

(1) Costs and fees are as provided by law or these rules.
(2) If the garnishee is not indebted to the defendant, does not hold any property subject to garnishment, and is not the defendant's employer, the plaintiff is not entitled to recover the costs of that garnishment.

M.C.R. 3.101(R) is consistent with the general rule that a judgment creditor must prevail, in the

specific garnishment proceeding, in order to tax the costs of that garnishment. Court rules, like

statutes, "are to be interpreted  in light of, and consistent with, the general purpose sought to be

5

served thereby" *In re Dissolution of Esquire Products International, Inc.*, 145 Mich. App. 106, 110 (1985) citing *Issa v. Garlinghouse*, 133 Mich. App. 579, 582 (1984). M.C.R. 3.101(R) lists the reasons that a judgment creditor will not obtain any relief in the garnishment proceeding, will not improve its position, and cannot be considered the prevailing party. Its clear purpose is to limit the taxation of garnishment costs to those garnishments where the judgment creditor obtains relief.

MCR 3.101 (R) forecloses the argument that once the judgment creditor prevails in the underlying action it will also be considered the prevailing party in any ancillary proceeding attempting to enforce the judgment and entitled to tax the cost of any such proceeding, regardless of the outcome of the ancillary proceeding. If that were the case, a judgment creditor should be able to tax costs of the garnishment even if the garnishee is not indebted to the defendant etc. Moreover, the rule refers to "that garnishment." The ability to tax costs depends on the outcome of each garnishment – not the outcome of the entire case.

### C. Other principles of statutory construction indicate that governing garnishments should be interpreted in favor of the judgment debtor.

Due to the harshness of the garnishment remedy, statutes and rules governing its procedure must be strictly construed. *Chapman v. Detroit Metropolitan Corp.,* 268 Mich. 391; 256 N.W. 459 (1934). "In Michigan, garnishment proceedings are governed by statute and court rules and because it is often a harsh remedy, the statutory requirements are strictly construed[.]" *Insurance Co. of North America v. Issett,* 84 Mich. App. 45, 47-48; 269 N.W.2d 301 (1978) (citing *People's Wayne County Bank v. Stott*, 246 Mich. 540; 224 N.W. 352 (1929)). "This interpretation of the court rule is additionally buttressed by doctrines of construction that serve to

protect the principal debtor. Because garnishment is a harsh remedy, its application will be limited whenever possible by reasonable construction of court rules and statutes." *Sears, Roebuck & Co. v. A. T. & G. Co., Inc.,* 66 Mich. App. 359, 368-69; 239 N.W.2d 614 (1976) (citing *Ford v. Detroit Dry Dock Co.,* 50 Mich. 358; 15 N.W. 509 (1883); *People's Wayne County Bank v. Stott,* 246 Mich. 540; 224 N.W. 352 (1929).

*Watkins v. Peterson Enterprises, Inc.,* 137 Wash. 2d 632, 973 P.2d 1037 (1999), is on point. The Washington Supreme Court held that a creditor is not entitled to recover fees and costs when the "writ of garnishment is unsuccessful since the writ has found no garnishable income or property held by the garnishee." *Id.* at 648. The Washington statute describing the circumstances where ths garnishment is unsuccessful (and therefore no fees or costs are recoverable) is strikingly similar to M.C.R. 3.101(R):

> If it appears from the answer of the garnishee that the garnishee was not indebted to the defendant when the writ of garnishment was served, and that the garnishee did not have possession or control of any personal property or effects of the defendant, and if an affidavit controverting the answer of the garnishee is not filed within twenty days of the filing of the answer, as provided in this chapter, the garnishee shall stand discharged without further action by the court or the garnishee and shall have no further liability. RCW 6.27.240.

**2.     By stating, in their applications and writs for garnishment, that postjudgment costs, and the amount of the unsatisfied judgment now due includes costs for unsuccessful garnishments, Defendants violated the Fair Debt Collection Practices Act.**

The Fair Debt Collection Practices Act states that a debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. 15 U.S.C. § 1692e. The false representation of the character, amount, or legal status of any debt is a violation of that section.  15 U.S.C. § 1692e(2)(A). The FDCPA also provides that a debt collector may not use any unfair or unconscionable means to collect or attempt to collect a debt,

including "the collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f (1).

Courts have held, in numerous cases, that these sections are violated when a debt collector adds improper charges to the amount it seeks to collect. In *Stratton v. Portfolio Recovery Assoc. LLC,* 770 F.3d 443 (6th Cir. 2014), the Sixth Circuit held that a debt collector violates the FDCPA by claiming interest that is not authorized by the contract or state law. Cf. *McCollough v. Johnson, Rodenburg & Lauinger, LLC*, 637 F.3d 939, 950 (9th Cir. 2011): collection firm violated the FDCPA by attempting to collect attorney fees without authorization; *Shula v. Lawent*, 359 F.3d 489, 490 (7th Cir. 2004): attempt to collect court costs that had not been awarded; *Cruz v. Int'l Collection Corp.*, 673 F.3d 991, 1000 (9th Cir. 2012): attempt to collect improper interest and fees: *Kojetin v. CU Recovery, Inc.* 212 F.3d 1318 (8th Cir. 2000): imposition of a percentage-based collection fee; *Stolicker v. Muller, Muller, Richmond, Harms, Myers & Sgroi, P.C.* 2005 WL 2180481 (W.D. Mich. Sept. 9, 2005): imposition of a percentage-based attorney fee without a court determination of reasonableness.

*Watkins v. Peterson Enterprises, Inc.* 57 F.Supp. 2d 1102 (E.D. Wash. 1999) is nearly identical to the present action. There, the court held that the debt collector violated 15 U.S.C §§ 1692e and 1692f by filing writs that included costs and fees for associated with prior unsuccessful writs of garnishment.

The FDCPA is a strict liability statute. " A plaintiff does not need to prove knowledge or intent . . . Strict liability places the risk of penalties on the debt collector that engages in activities which are not entirely lawful, *Stratton v. Portfolio Recovery Assocs., LLC*, *supra* at 448 49 (6th

Cir.2014).  By its terms, the FDCPA makes it a violation to collect "any amount . . . unless such

amount is expressly authorized by the agreement creating the agreement or permitted by law."

15 U.S.C. § 1992f (1).  If a debt collector collects or attempts to collect an amount that is not

permitted by law, it violates the Act. *Id.* at 450 - 51.

**3.**     **The Debt Buyer Defendants are liable for the collection actions of their lawyers.**

There is no question that the debt buyer defendants  are debt collectors within the

meaning of the Fair Debt Collection Practices Act since they take assignments of the debts after

they are in default. *Ruth v. Triumph Partnerships,* 577 F.3d 790 (7th Cir.  2009).  Numerous

Court's have held that debt collectors employing attorneys or other agents to carry out debt

collection practices are vicariously liable for their agents' conduct. *Fox v. Citicorp Credit*

*Services, Inc.,* 15 F.3d 1507 (9th Cir. 1994). In *Wadlington v Credit Acceptance Corp.* 76 F.3d

103, 108 (6th Cir. 1996 ) the Sixth Circuit stated, in dicta, that the defendant would be liable for

the acts of its attorneys if it were a debt collectors (as the present defendants are): "If Citicorp

was a debt collector, it would appear to accord with the intent of Congress for Citicorp to be held

directly liable to a consumer whom Citicorp sued in the wrong judicial district. See *Fox, 15 F.3d*

*at 1516*," Courts in the Sixth Circuit cite *Wadlington* to hold that debt buyers are liable for the

collection activity of their attorneys:

> In light of the holdings of *Wadlington* and *Fox*, various district courts have held debt
> collectors vicariously liable for their agents' FDCPA violations. See, e.g., *Suquilanda v.*
> *Cohen & Slamowitz, LLP,* 10 Civ. 5868, 2011 U.S. Dist. LEXIS 102727, 2011 WL
> 4344044, at *4 (S.D.N.Y. Sept. 8, 2011) ("Courts have concluded that where the principal
> is a 'debt collector,' the principal may be liable for its agent's FDCPA violations."); see
> also *Edwards v. Velocity Inv*., No. 1:10 CV 1798, 2011 U.S. Dist. LEXIS 101655, 2011
> WL 4007394, at *8 (N.D. Ohio Sept. 8, 2011) (noting that because defendant was a debt
> collector, it could be vicariously liable for actions of attorney debt collector in denying
> defendant's motion for summary judgment); *DeFazio v. Leading Edge Recovery*

*Solutions*, No. 10-cv-02945, 2010 U.S. Dist. LEXIS 131357, 2010 WL 5146765, at
*3(D.N.J. Dec. 13, 2010) (same). In so holding, courts have focused on the fact that "to
find otherwise would result in companies shielding themselves from liability by hiring
attorneys to avoid the requirements of the FDCPA." *Beach v. LVLN Funding, No.*
12-CV-778, 2013 U.S. Dist. LEXIS 63643, 2013 WL 1878938, at *2 (E.D. Wis. May, 3,
2013); see also Fox, 15 F.3d at 1516 ("In order to give reasonable effect to section 1692j,
we must conclude that Congress intended the actions of an attorney to be imputed to the
client on whose behalf they are taken."). . . .

In this case, it is undisputed that LVNV hired co-defendant Buffaloe to carry out debt
collection efforts against plaintiff. Buffaloe appears as attorney for LVNV in the civil
warrant filed in Knox County General Sessions Court, with LVNV acting as plaintiff and
beneficiary of Buffaloe's efforts. LVNV's arguments about the need for proof of an
agency relationship overlook the nature of the relationship between LVNV, the client, and
its attorneys, the Buffaloe law firm. The Court concludes that LVNV may be held liable
for any of Buffaloe's FDCPA violations, making summary judgment improper.

*White v. Sherman Financial Group, LLC,* 984 F. Supp. 2d 841, 852- 53 (E.D. Tenn. 2013)

Accord*: Lilly v. RAB Performance Recoveries, LLC*, 2013 U.S. Dist. LEXIS 109369, *21-25

(E.D. Tenn. Aug. 5, 2013). Ex. 2*; Edwards v. Velocity Invs*., LLC, 2011 U.S. Dist. LEXIS

101655, * 24-26 (N.D. Ohio Sept. 8, 2011), Ex. 4:

Upon review, the Court finds that, because Velocity is itself a debt collector, vicariously
liability applies. See, *Wadlington v. Credit Acceptance Corp*., 76 F.3d 103 (6th Cir. 1996)
(finding that vicarious liability could not be imposed because entity was not itself a "debt
collector" since it obtained debt before debt was in default); *Pollice v. National Tax
Funding, LLC*, 225 F.3d 379 (3d Cir. 2000)(noting that entity who obtains debt after debt
is in default is consider a 'debt collector' for purposes of FDCPA and can be held
vicariously liable for the acts of its agents). Here, plaintiff presents evidence indicating
that Velocity's primary business is the purchase and collection of defunct consumer debt.
Velocity does not dispute that it purchased plaintiff's debt after it was in default. As such,
the Court finds that Velocity is itself a debt collector and thus is vicariously liable for the
actions of its agents.

CONCLUSION

Fore these reasons, Plaintiffs request that the Court grant their motion for summary

judgment and determine that Defendants are liable for violations of the Fair Debt Collection

10

Practices Act.


Dated: June 30, 2015                                 /s/ Phillip C. Rogers
                                                     Phillip C. Rogers (P34356)
                                                     Attorney for Plaintiffs
                                                     40 Pearl Street, N.W., Suite 336
                                                     Grand Rapids, Michigan 49503-3026
                                                     (616) 776-1176
                                                     ConsumerLawyer@aol.com



Dated:  June 30, 2015                                 /s/ Michael O. Nelson
                                                     Michael O. Nelson (P23546)
                                                     Attorney for Plaintiffs
                                                     1104 Fuller N.E.
                                                     Grand Rapids, Michigan 49503
                                                     (616) 559-2665
                                                     mike@mnelsonlaw.com